## IN THE COURT OF APPEALS OF IOWA

No. 18-0383
Filed May 2, 2018

**IN THE INTEREST OF C.T.,**
**Minor Child,**

**A.T., Mother,**
        Appellant.

**STATE OF IOWA,**
        Appellant,

**VICKI R. DANLEY, Guardian Ad Litem,**
        Appellant.
_____

Appeal from the Iowa District Court for Fremont County, Craig M. Dreismeier, District Associate Judge.

A mother appeals the termination of her parental rights to her child, C.T., and the State of Iowa and C.T.'s guardian ad litem appeal the juvenile court's order dismissing the petition to terminate C.T.'s father's parental rights. **AFFIRMED ON BOTH APPEALS.**

Jaclyn A. Tackett of Tackett Law Offices, Glenwood, for appellant mother.

Kyle J. McGinn of McGinn Law Firm, Council Bluffs, for appellee father.

Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney General, for State.

Vicki R. Danley, Sidney, guardian ad litem for minor child.

Considered by Vogel, P.J., and Doyle and Bower, JJ.

**DOYLE, Judge.**

A mother appeals the termination of her parental rights to her child, C.T., and the State of Iowa and C.T.'s guardian ad litem (GAL) appeal the juvenile court's order dismissing the petition to terminate C.T.'s father's parental rights. Upon our de novo review, *see In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010), we affirm.

### I. Background Facts and Proceedings.

A.T. is the mother and T.T. is the father of C.T., born in January 2015. The parents married shortly after C.T.'s birth. Both parents have a history of substance abuse and mental-health concerns. They also have criminal histories, including convictions for child endangerment, the circumstances of which led to a prior Iowa Department of Human Services (DHS) child-in-need-of-assistance (CINA) case.[1] That case was closed in September 2015.

The parents came to attention of the DHS again in April 2016, after the parents' probation officers reported each parent had relapsed on methamphetamine. The child was removed from the parents' care and placed in the care of his paternal grandparents, where the child has since remained.

Substantial services were again offered to both parents, including substance-abuse treatment and supervised visitation. Each parent had successes and failures. Initially, neither parent engaged in treatment. Each parent was then placed in jail for probation violations, and both were still incarcerated at the time of the November 2016 review modification/permanency hearing. At that time, the mother was anticipating she would be released from jail shortly and would go to a

---

[1] These convictions concerned two of the mother's older children, who are not at issue in this case and whose father is not T.T.

halfway house until a bed opened up at a substance-abuse treatment center. The father remained in jail, but he notified the court he had been admitted into drug court. The court changed the permanency goal to termination of parental rights, and the State later filed a petition seeking parental-rights termination.

Thereafter, both the mother and the father engaged in their treatment programs. Both were sober, obtained employment, and visited their child. A termination-of-parental-rights hearing was held at the end of April 2017, and the court dismissed the termination-of-parental-rights petition at the end of May 2017. The court found the mother "had made great strides in her treatment . . . and that attempts at reunification could occur in the very near future." The father was also successfully participating in the drug-court program, but he was placed at a "three-quarters home" in Nebraska that did not allow children to be placed there and was not expected to complete the program until November 2018. The court instructed the DHS "to keep services in place to promote the goal of reunification with both parents."

By November 2017, the mother had disengaged from services, including treatment and visitation with the child. She missed drug screens and had moved to a new city without providing her address or contact information to anyone, including her attorney. The father was in the same situation as he was at the time of the prior termination-of-parental-rights hearing. He was progressing through the drug-court program and was sober, employed, and regularly visiting the child, but he was still living at the program home in Nebraska and was not expected to complete the drug-court program until November 2018.

Another termination-of-parental-rights petition was filed in November 2017, and hearing was held in January 2018. The mother did not appear. The father did, and he testified about his success thus far in the drug-court program. At that time, the father remained in the same non-child placement home in Nebraska, so it was undisputed the child could not be returned to his care at that time. However, it was expected the father would be able to move from the home in March 2018, and he planned at that time to move in with his father, his mother, and C.T.. Additionally, the father had progressed to unsupervised visitation at his father's home and had been allowed overnight passes to stay there. The father was also seeking a divorce from the mother but had been unable to serve her papers because her location was unknown. He requested the termination-of-parental-rights hearing be continued until March 2018 or that a guardianship be established with the paternal grandparents. The mother through her attorney joined in the father's request. The DHS social work case manager and the child's GAL both recommended termination of parental rights based upon the mother's lack of participation and sobriety and the father's inability to immediately resume care of the child. The case manager testified the child was in need of permanency and a guardianship could be contested in the future.

Following the hearing, the juvenile court, in a very well-written ruling, entered its detailed order terminating the mother's parental rights but dismissing the petition to terminate the father's parental rights. As to the mother, the court found the State established grounds for termination existed under Iowa Code section 232.116(1) paragraphs (d), (e), (i), (h), and (*l*) (2017), termination of her parental rights was in the child's best interests under the framework set out in

section 232.116(2), and no exceptions to termination applied as described in 232.116(3). The court also found the State established grounds for termination existed under paragraphs (h) as to the father, because the child could not be returned to his care at that time. However, the court found that termination of the father's parental rights was not in the child's best interests. The court explained:

> Since becoming involved in the drug court program, [the father] has done everything asked of him to regain custody of his son. His bond with [the child] can't be [overstated]. [The father's] plan is to move home and live with his parents. [The father's] main support system is his parents. [The child's] need for permanency will not be impacted practically speaking. [The child's] situation will not change in the few months it takes for [the father] to achieve these final steps. He will continue to go home and sleep in the same bed he has slept in for the past twenty months. He will continue to have his needs met. He will continue to have meaningful contact with [the father]. [The paternal grandparents] will assure he is safe and protected during this period of time.
>
> Despite the fact that [the child] is placed with his paternal relatives and this court has declined to terminate [the father's] parental rights, this court finds that [the mother's] parental rights should still be terminated. [The father] testified he is trying to divorce [the mother], however, is unable to do such because her whereabouts are unknown. [The mother's] efforts toward reunification in the past six months have been poor. [The child] has not been fazed by [the mother's] lack of involvement. [The father's] support system needs to be sober and supportive. [The mother] is not a part of this system. It is in [the child's] best interest that [the mother's] parental rights be terminated.

The court also found a guardianship was not "the best permanency goal for [the child]," noting that if the father was *not* successful, termination of the father's parental rights should be the long-term goal. Having found that termination of the father's parental rights was not in the child's best interests, the court dismissed the State's petition as to the father.

## II. Discussion.

### A. The Mother's Appeal.

The mother appeals the juvenile court's ruling, but she only challenges one of the grounds for termination found by the juvenile court. When the juvenile court finds more than one ground for termination under section 232.116(1), "we may affirm . . . on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). Because only one of the five grounds found by the juvenile court was challenged in her appeal, and thus the mother does not dispute the other four grounds were proven as found by the court, the mother's claim must fail. *See id.* In any event, the record is clear; given the mother's failure to participate at the end of the case and her lack of involvement in the child's life, the State established at the termination-of-parental-rights hearing that the child could not be returned to the mother's care at that time. *See* Iowa Code § 232.116(1)(h)(4) (requiring the State to prove, among other elements, that the child could not be returned to the parent's care). Accordingly, we affirm the juvenile court's order terminating the mother's parental rights.

### B. The GAL and State's Appeal.

Additionally, the GAL, joined by the State, appeals the juvenile court's finding *not* to terminate the father's parental rights. Both argue that termination of the father's parental rights was in the child's best interests, citing, among other things, the amount of time the child had been out of the father's care. Upon our de novo review of the record, we find no reason to disturb the juvenile court's contrary determination. The father had made strides towards reunification, and given the bond between the father and the child, the court's conclusion that

termination was not in the child's best interests was reasonable.  Considering "the child's safety," "the best placement for furthering the long-term nurturing and growth of the child," and "the physical, mental, and emotional condition and needs of the child," we agree upon our de novo review of the record and the unique facts of the case that termination of the father's parental rights—at least at the time of the termination hearing—was not in the child's best interests.  We therefore affirm the juvenile court's order dismissing the termination-of-parental-rights petition as to the father.

### III.  Conclusion.

For the foregoing reasons, we affirm the juvenile court's order in all respects.

**AFFIRMED ON BOTH APPEALS.**